DUPLICATE ORIGINAL

FILED BY ___*Cariffir*___ D.C.

**Sep 30, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**19-3564-OTAZO-REYES**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# SEALED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 19-74 MAG |
| v. | * | SECTION:   MAGISTRATE |
| CLAUDIA ELENA ANTILLON ZAHUITA | * | |
|    a/k/a Julie Batista | | |
|    a/k/a KLA | * | |

\*　　\*　　\*

## MOTION TO SEAL COMPLAINT, AFFIDAVIT, AND ARREST WARRANT

**NOW INTO COURT** comes the undersigned Assistant United States Attorney, who with respect represents that:

The undersigned Assistant United States Attorney is informed by Special Agents of the Federal Bureau of Investigation that should the complaint, affidavit, and arrest warrant become public record, it would severely hamper this ongoing criminal investigation and endanger law enforcement personnel.

**WHEREFORE**, the Government prays that its motion to seal the complaint, affidavit, and arrest warrant be granted.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY

EDWARD J. RIVERA
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3163
Email: edward.j.rivera@usdoj.gov

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

# SEALED

UNITED STATES OF AMERICA       *    **CRIMINAL NO. 19-74 MAG**

v.       *    **SECTION:  MAGISTRATE**

CLAUDIA ELENA ANTILLON ZAHUITA  *
    a/k/a Julie Batista
    a/k/a KLA       *

       *   *   *

## O R D E R

Considering the foregoing Motion to Seal Complaint, Affidavit, and Arrest Warrant;

**IT IS HEREBY ORDERED** that the complaint, affidavit, and arrest warrant be **SEALED** until further order of the Court, with the exception that copies be provided to the United States Attorney's Office for the Eastern District of Louisiana and the Federal Bureau of Investigation.

New Orleans, Louisiana, this _24th_ day of June, 2019.

_____
HONORABLE JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

DUPLICATE ORIGINAL

AO 91 (Rev. 11/11)  Criminal Complaint

AUSA Edward Rivera   06/24/2019

# UNITED STATES DISTRICT COURT
for the

Eastern District of Louisiana

## SEALED

United States of America
v.

CLAUDIA ELENA ANTILLON ZAHUITA
a/k/a Julie Batista
a/k/a KLA

)
)
)
)
)
)
)

Case No.

19-74 MAG

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 2016 - October 2018 _____ in the parish of _____ Plaquemines _____ in the
_____ Eastern _____ District of _____ Louisiana _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1341 | Frauds and swindles |
| 18 U.S.C. § 1343 | Wire fraud |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Brett Heil, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 06/24/2019 _____

_____
*Judge's signature*

City and state: _____ New Orleans, Louisiana _____

Hon. Joseph C. Wilkinson, Jr., U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

# SEALED

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 19-74 MAG** |
| **v.** | * | **SECTION: MAGISTRATE** |
| **CLAUDIA ELENA ANTILLON ZAHUITA** | * | |
|    **a/k/a Julie Batista** | | |
|    **a/k/a KLA** | * | |

                                          *      *      *

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Brett Heil, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for an arrest warrant for CLAUDIA ELENA ANTILLON ZAHUITA (hereafter ANTILLON ZAHUITA), date of birth (DOB) 04/07/1983, country of citizenship (COC) Mexico, Mexican passport number G18657936.

2.     I am a Special Agent with the Federal Bureau of Investigation (hereinafter, the "FBI"). I am assigned to the Cyber Squad located in the New Orleans Field Division. I have been a Special Agent since September 2017. As a Special Agent with the FBI, I am tasked with investigating various types of federal fraud and cybercrime, including, but not limited to computer intrusions, identity theft, internet crimes, and other frauds and swindles.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts in this affidavit come from, among other things, my personal observations, my training and experience, and information obtained from other entities and witnesses throughout the course of the investigation.

4.     The facts set forth in this affidavit establish possible violations of the following statutes: 18 U.S.C. § 1341 (Frauds and swindles); 18 U.S.C. § 1343 (Wire Fraud)

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     In summary, the United States is investigating Planet Travel, Newport International Investments (hereafter "Newport International"), and associated businesses and subjects based on (a) the scheme described below and (b) the subsequent transfer of proceeds suspected to be fraudulent to multiple accounts at the behest of employees of the above companies. Furthermore, a thorough review of investigative evidence obtained through email search warrants, customer subpoenas, and victim interviews revealed that CLAUDIA ELENA ANTILLON ZAHUITA, aka JULIE BATISTA, aka KLA, was a senior-level employee directly engaged in the commission of the captioned timeshare purchase fraud scheme which, to-date, has victimized over 100 individuals and led to a minimum financial loss of approximately $10,500,000.

2

7.      As set forth in greater detail below, beginning at least as early as January 2016, ANTILLON ZAHUITA and her co-conspirators (the "defendants") defrauded over 100 individuals out of more than $10 million by falsely representing that they would sell the victims' timeshare units in return for purportedly-reimbursable closing fees when, in reality, they had no intention of selling the victims' timeshare units or reimbursing the victims for the fees they paid. In furtherance of their scheme, the defendants: (1) created and controlled companies located in Mexico that defendants falsely told victims were located in the United States; (2) through gross misrepresentation, convinced the victims to contract with them to advertise/sell their timeshare properties; (3) directed victims to wire funds to pay for fake, purportedly-reimbursable escrow fees, taxes, and other closing-related expenses ahead of the purported timeshare sale; (4) never sold the timeshare properties; (5) never repaid the purported fees, taxes, and other expenses; and (6) used victim funds for their own benefit. In doing so, the defendants knowingly caused victims' funds to be transferred by interstate and international wires.

**Case Background – Initial Victims**

8.      In June 2018, FBI New Orleans was notified of a potential fraud scheme that victimized a local married couple (hereafter "Victim 1"). An initial investigation into Victim 1's complaint revealed that they were defrauded out of approximately $540,000 USD as part of a real estate scam associated with the purchase of their timeshare in Mexico. The primary subjects, operating under the business names Planet Travel and Newport International Investments, contacted Victim 1 in or around June 2017 to inquire about purchasing a portion of their timeshare in Mexico. Victim 1 agreed to the purchase price of $48,750, which was to be held in escrow by Newport International Investments until a background check was conducted on the property and a standard finders-fee was paid by Victim 1. However, after signing a contract and paying the initial

3

fee, the subjects proceeded to require new fees and taxes associated with the purchase, claiming that the purchase funds owed to Victim 1 could not be released until the new payments were made. This pattern continued for nearly a year, until Victim 1 had made over $540,000 in payments without being reimbursed for the fees or receiving the agreed upon purchase price of the timeshare, both of which were contractually promised by Planet Travel and Newport International.

9.     In July 2018, FBI New Orleans identified a second couple, located in Oregon, who was defrauded by Planet Travel and Newport International (Victim 2). In September 2017, Victim 2 received a call from a representative of Planet Travel inquiring about selling their timeshare in Mayan Palace, Nueva Vallarta, Mexico. The subsequent fact pattern was identical to the one established by Victim 1. Victim 2 signed a formal contract with Planet Travel and Newport International to sell their timeshare, paid an initial upfront closing fee, and was subsequently told by associates of Planet Travel and Newport International that additional payments were required in order to receive the funds promised to them for selling their timeshare. In this instance, Victim 2 made fourteen payments totaling $291,634 to Mexican bank accounts provided by associates of Planet Travel and Newport International. Just as with Victim 1, Victim 2 never received the payment for the purchase of their timeshare unit, nor were they repaid for any of the taxes or fees paid at the behest of Planet Travel and/or Newport International.

10.     Subsequent investigation conducted by FBI New Orleans revealed numerous additional victims defrauded by Planet Travel and Newport International and, furthermore, that Planet Travel and Newport International were only pieces of a larger criminal fraud organization, operating out of Mexico, that had perpetrated the sophisticated fraud scheme against victims throughout the United States, and abroad, over the last 3-4 years. In each case, an individual that owned a timeshare or resort property in Mexico was contacted by a company that offered to

4

advertise or sell the customer's property for a small fee. The companies were legally registered in the United States, maintained a U.S. address (through virtual office space networks), operated a professional-looking website, and listed legitimate email addresses and U.S. phone numbers. In each case, a legitimate-looking contract was signed between the sellers (i.e. victims) and the subject companies [Affiant Note: The FBI identified multiple, interconnected companies engaged in the fraud scheme that were all operated by the overarching criminal organization]. The initial contract included a single fee to the subject companies in exchange for brokering the sale. In each case, after the contract was signed and the initial fee was paid by the customer, the subject companies would begin to require a series of additional taxes or payments that they claimed were necessary before the purchase funds from the alleged buyer could be released to the seller. Typically, the rationale given to sellers was that a Mexican tax or other government fee needed to be paid, but they were always guaranteed by the companies that these additional payments would be reimbursed. In each case, the representatives of the subject organizations (i.e. Planet Travel, Newport International, etc.) instructed customers to wire their payments to bank accounts in Mexico, and required the sellers to provide a receipt of the successful wire transaction, as well as a copy of their driver's license or passport. In each case, this pattern continued until the customer refused to make any further payments. Over the course of the investigation, the FBI discovered no instances in which the sellers received either reimbursement for their payments or the initial purchase price of their timeshare.

**Subsequent Investigation and Findings**

11.     Based on initial investigative findings, which identified Planet Travel and Newport International as the organizations engaged in the fraudulent timeshare purchase process, your affiant gathered open source information about both companies, to include company websites,

5

email addresses, phone numbers, business filings, etc. As previously stated, both companies were legally registered in the United States, operated a professional-looking website, maintained a physical U.S. address, and publicly listed legitimate email addresses and U.S. phone numbers.

12.     The company's physical addresses were listed in Colorado (Newport International) and Wyoming (Planet Travel), and tied to virtual office space companies that provided business services (mail forwarding, physical addressing, etc.) that enabled the companies to run business activities through the address while operating remotely. Follow-up, both in-person and over the phone, with the virtual office space providers indicated that neither company had employees working at the physical addresses of the office spaces. Furthermore, email search warrant records, further detailed below, indicated that the operatives of Planet Travel and Newport International were located in Mexico.

13.     In response to a subpoena, your affiant obtained customer records from Regus (the virtual office space provider for Newport International) and identified Linda Ward (WARD), email address lindaruthgrahamward@gmail.com as the entity through which Newport International was registered.

14.     A     subsequent     search     warrant     for     the     account     contents     of lindaruthgrahamward@gmail.com identified a significant amount of communication facilitating the operational activities of the timeshare fraud scheme. In addition to officially registering Newport International, the account was used to facilitate physical mail delivery to and from multiple customers and engage with other individuals within the criminal organization, to include conversations with the salesmen who were in direct contact with the victims being defrauded. Furthermore, lindaruthgrahamward@gmail.com engaged in communication with multiple individuals that were clearly higher-level functionaries in the organization, such as Robin

6

Birmingham, (birminghamrobin@gmail.com), Julie Batista (juliebatista6@gmail.com), and Gina Mora (gina.mora629@gmail.com) [Affiant Note: As detailed below, these names were pseudonyms used by the defendants to protect their identities]. For instance, on multiple occasions juliebatista6@gmail.com (BATISTA) and gina.mora629@gmail.com (MORA) forwarded personal contact information and documents associated with a timeshare purchase agreement (contract addendums, wire instructions, etc.) to WARD, either directly or through birminghamrobin@gmail.com (BIRMINGHAM). Each time, WARD subsequently had Regus (Newport International's virtual office space provider) print and mail the information to a potential "seller." On multiple occasions, the seller was an identified victim that had submitted complaints about financial loss related to Planet Travel and/or Newport International.

15.    A subsequent series of search warrants on multiple email accounts tied to the scheme, including those of BIRMINGHAM, BATISTA, and MORA, corroborated their involvement in the scheme at the highest levels, while also revealing their true identities [Affiant Note: As further detailed below, through internal payroll spreadsheets and other communications sent over email, your affiant identified that Julie Batista's true name is CLAUDIA ELENA ANTILLON ZAHUITA, and that Robin Birmingham's true name is MARTIN ALONSO ACEVES CUSTODIO. The email search warrants also revealed the full scope of the organization and its criminal fraud activities, to include general operating procedures, other fraudulent companies operated by the organization, and additional victims.

***General Operating Procedures and Communication Patterns:***

16.    Information gleaned from the aforementioned email search warrants revealed the following operating procedures and communication patterns associated with the criminal activity of the organization:

7

A. Internal email communications amongst organizational employees were conducted almost entirely in Spanish, and employees adhered to operational security (OpSec) principles throughout their communications. First, on multiple occasions employees were encouraged to use Virtual Private Networks (VPNs), which would ensure secure/anonymous online activities. Second, rather than addressing each other by their true names, employees utilized pseudonyms (i.e. Julie Batista, Robing Birmingham, etc.), and three letter coded acronyms they referred to as "claves" (which loosely translates to "Key" or "Code" in Spanish). The true identities of high-level actors, as well as multiple other individuals in the organization, were identified through a series of email communication discoveries, which are addressed in detail in paragraphs 20-23.

B. Potential customer leads are initially sent to ACEVES CUSTODIO (aka Robin Birmingham; aka ALA), the chief executive of the operation, who passes them down to senior administrators and supervisors, who ultimately assign the lead(s) to sales agents.

C. The assigned Sales Agent begins cold calling potential customers as the representative of one of multiple companies that were identified as operating under the umbrella organization. The customers are told there is a buyer for their timeshare property and, if they are willing to sell, the Sales Agent and his/her company (i.e. Planet Travel) offer to act as the intermediary to broker the sale. On most occasions, an escrow company (i.e. Newport International) that will handle the financial transfers is also introduced (the escrow companies are operated by the same overarching organization as the sales companies).

D. If the customer agrees to sell their property, the Sales Agent provides a contract for the customer to sign. The contract typically includes a small finder's fee or portion of the sale that the customer must pay as part of the sale. The initial contract does not include any additional taxes or fees.

E. Once the initial contract is signed, they begin to introduce a series of surprise taxes, fees, and other payments that must be made by the seller before the buyer's funds can be released to the customer selling the property. These payments are always required to be made via wire transfer, with the beneficiary accounts located in Mexico.

- Your affiant identified a "Checklist" (see Figure 1 below) sent from ACEVES CUSTODIO to ANTILLON ZAHUITA (aka Julie Batista). The checklist outlined the progressive series of fees that the Sales Agent should attempt to extract from the customer. Each tax, fee, etc. comes with a boiler plate explanation of why the

8

new payment is required, and at each level customers are promised that they will be reimbursed for the fees and suffer no financial loss.



| | CHECK LIST |
|---|---|
| 1 | MAINTENANCE FEE, TRANSFER FEE, RENOVATION, ALL INC.* |
| 2 | FIR |
| 3 | CLOSING AND ADMINISTRATION |
| 4 | EFT + S.R.E |
| 5 | 16% I.V.A TAX +2 ID'S + SSN |
| 6 | EXCESS INCOME TAX |
| 7 | INAMOVIBLE PROPERTY TAX |
| 7.5 | RESORT BALANCE* |
| 8 | UPGRADE ON OFFER |
| 9 | REMITTANCE OF FUNDS + ENVIO DE FONDOS 1st Time |
| 10 | FREE AND CLEAR CERTIFICATE |
| 11 | LUXURY TAX |
| 12 | RESUBMISSION FEE + OUTGOING INTL BANK WIRE INSURANCE |
| 13 | ERASURE OF RECORDS |
| 14 | CAPITAL GAINS ASKING FOR A BRIBE  (ALWAYS GO FOR THE BRIBE) |
| 15 | CAPITAL GAINS |
| 16 | FINE |
| 17 | BANK INTEREST |
| 18 | MORATORIUM FEE + GOOD FAITH DEPOSIT BUYER (ALWAYS GO FOR GFD) |
| 19 | SPEI |
| 20 | 16 % I.V.A TAX |
| 20.5 | REMITTANCE OF FUNDS ON INDIVIDUAL SPEI TRANSACTIONS |
| 21 | MORATORIUM FEE + GOOD FAITH DEPOSIT SHAREHOLDERS (ALWAYS GO FOR GFD) |
| 22 | MORATORIUM FEE |
| 23 | CLOSING OF FIDEICOMISO |
| 24 | MUR |
| 25 | FEDERAL US TAX |
| 26 | STATE TAX |
| 27 | HONORARIOS DE ABOGADOS |
| 28 | HONORARIOS DE ABOGADOS II (DUPLICAR) |

*Figure 1 – Checklist of fraudulent payments sent between organizational subjects over email. The listed fees match the fees representatives of Planet Travel, Newport International, etc. required victims to pay.*

F.  Each time a new fee is paid by a customer, the wire transaction is documented via emails from the sales agents and/or their supervisors to the administrators (ANTILLON ZAHUITA and BARAJAS RAMIREZ), and then to the Chief Executive (ACEVES CUSTODIO). The documentation email typically contains a copy of the wire transfer receipt and a driver's license (or other government identification card) from the customer.

- Your affiant identified a series of emails, sent monthly to ACEVES CUSTODIO from BARAJAS RAMIREZ, which identified all the customers included in the fraud scheme, and summarized the financial transactions that were the end result of the scheme. The emails were always entitled "Cash Flow" (or some version of Cash Flow) and included an attached spreadsheet. The spreadsheet showed financial transactions the organization had received from individuals between January 2017 and the month in which the spreadsheet was created/shared. Each row in the spreadsheet included the name of the customer, the name of the business entities through which the contract was brokered, the three letter coded acronym of the sales agent/supervisor associated with the sale (which correlated

9

with the organizational chart and payroll spreadsheet highlighted in paragraphs 20-23 below), the financial amount received, and the type of fee that had been applied (which corresponded with the aforementioned "Checklist" of fees ACEVES CUSTODIO provided ANTILLON ZAHUITA).

- A more recent Cash Flow report, sent in October 2018, identified over 100 customers, including initial complainants Victim 1, Victim 2, and multiple other previously identified victims. In total, the spreadsheet indicated that the organization had received over $10,400,000 in wire transfers to approximately a dozen bank accounts in Mexico from January 2017 - October 2018 [Affiant Note: these transactions were also corroborated by wire transaction receipts provided by victims and identified in email correspondence within the organization.]

G. The process repeats until the customer refuses to pay any additional fees, or runs out of money.

### *Associated Companies + Destination Mexico (Parent Company):*

17.     In addition to the general operating procedures outlined above, our investigation revealed that Planet Travel and Newport International were only two companies, among multiple, created and utilized by individuals associated with the fraud scheme. On October 17, 2018, BATISTA received an email from masteroffice@runbox.com, which included an Excel spreadsheet attachment entitled "Company_Expirations." The spreadsheet included the following list of companies, along with each company's website, hosting service, expiration date, and the email address used to register the company:

| Company | Website | Hosting Service | Name Registered |
|---|---|---|---|
| Advance Travel INC | advancetravelusa.com | domainracer.com | advance.travel@aol.com |
| Advance Travel INC | advancetravelusa.email | godaddy.com | advance.travel@aol.com |
| All American Real Estate | aarellc.com | koddos.net | jbrown |
| All American Real Estate | aarellc.email | godaddy.com | Robin Birmingham |
| American International Investment Group | aiig-us.info | orangewebsite.com | Agaia |
| Bear Claw Travel | bearclawtravel.com | bluehost.com | alejjimenez17@gmail.com |

| Best Investment Services | bestinvestser.com | orangewebsite.com | systemsintercorporate@gmail.com |
|---|---|---|---|
| Best Investment Services | bestinveser.info | domainracer.com | systemsintercorporate@gmail.com |
| Champion Properties | champrops.us | namecheap.com | Robin Birmingham |
| Closing Source LLC | theclosingsrc.com | orangewebsite.com | coffeshopp@outlook.com |
| Equity Closing Services Group | equitycsg.com | domainracer.com | advance.travel@aol.com |
| Equity Closing Services Group | equitycsg.info | bluehost.com | alejjimenez17@gmail.com |
| Global Offshore Services | globaloffshoreservicesllc.com | orangewebsite.com | agaia@mail.com |
| Newport International Investments | newport-intl.com | flokinet.is | agaia@mail.com |
| NSC Holding | nsc-holdings.com | domainracer.com | nlwhitehill@gmail.com |
| Peach Title | peachtitle.com | domainracer.com | alejjimenez17@gmail.com |
| Planet Travel | planettravelagency.com | bluehost.com | americanint.or@gmail.com |
| Sandia Title | sandiatitle.com | orangewebsite.com | systemsintercorporate@gmail.com |
| Travel and Acquisitions | travelandacq.com | bluehost.com | alejjimenez17@gmail.com |
| Travel Innovations | travelinnovations-us.com | bluehost.com | alejjimenez17@gmail.com |
| Travel Plus Acquisitions | travelplususac.com | flokinet.is | alejjimenez17@gmail.com |
| Travel Right | travelrightwi.com | flokinet.is | masteroffice@runbox.com |
| World Travelers, INC | worldtravelersinc.com | orangewebsite.com | michton@protonmail.com |

*Figure 2 – List of fraudulent, U.S. companies owned and operated by the criminal fraud organization.*

18.     These companies were seen discussed throughout the email communications of organizational employees engaged in the timeshare scheme, often listed in contract agreements that were sent to victims and/or attached to subsequent victim wire transaction notifications that were communicated up the organizational chain of command. Internal discussion involving business registration, website hosting, and other elements further corroborated that the above-named companies were created and utilized to facilitate the fraud scheme, and that they were all operating under the purview of a single, large group of criminal actors.

11

19.     Further review identified probable cause to believe that DESTINATION(S) MEXICO acted as a legitimate, cover organization in Mexico under which the criminal entities operated the fraudulent companies. For instance, on January 8, 2019 ANTILLON ZAHUITA (elena.antillon.z@gmail.com) sent two job listings to elarios@sasempresarial.com, an employee recruitment service. The job postings listed Consultora de Destinos en Mexico y el Mundo as the name of the company hiring for the positions, and listed elena.antillon.z@gmail.com as the point of contact for the company related to the opening.

***Organizational Structure and True Identities:***

20.     Internal communications between employees of the criminal organization also revealed a clear hierarchy. First, an email from BIRMINGHAM to eness1923@gmail.com showed a high-level sketch of the organization's hierarchy.



***Figure 3 – Organizational Chart sent over email by ACEVES CUSTODIO.***

21.     A subsequent email from senior-level Administrator BARAJAS RAMIREZ (aka Gina Mora, aka GLL) to ACEVES CUSTODIO further clarified the organization's hierarchy. The email included a spreadsheet titled "Organigrama." The organizational chart showed the overarching operation broken down into divisions, with the employees in each division identified by their three letter acronym.

12



**Figure 4** – *A more granular organizational chart, which was emailed back and forth between subjects of the fraud organization.*

22.     Finally, an email sent on October 10, 2018, from ACEVES CUSTODIO to gacontabilidadfiscal@gmail.com (an accountant associated with the organization) included a payroll spreadsheet for the organization. The spreadsheet outlined each employee's bank account number, salary, and "level" within the company. Employees were listed between Level 0 (executive-level employees/salaries) and Level 3 (the lowest level employees/salaries).

| Comisionistas NIVEL 1 Altos y Constantes | | | | | | | | Comision Bruta | |
| Clave | Nombre | Apellido | Apellido | Banco | Cuenta | Clabe | email | | |
|---|---|---|---|---|---|---|---|---|---|
| SLM | SILEM NOEMI | FUENTES | FREGOSO | SANTANDER | 60594907295 | 014041605949072963 | silem2020@gmail.com | $ | 32,123.08 |
| PCO | FRANCISCO JAVIER | GARCIA | MAGAÑA | HSBC | 6482114257 | 021041064821142574 | pacogar21@icloud.com | $ | 12,073.63 |
| MBL | MAYBELLINE | COTA | GAMEZ | SANTANDER | 60589772188 | 014041605897721887 | maybellyne_16@hotmail.com | $ | 22,280.56 |
| CCH | MAURICIO ALEJANDRO | HURRLE | URBIETA | SANTANDER | 60589767829 | 074041605897678299 | mhurrle2344@gmail.com | $ | 33,340.32 |
| GLL | MARIA GUILLERMINA | BARAJAS | RAMIREZ | BANCOMER | 465978467 | 012041004659784678 | maria.barajas@gmail.com | $ | 19,852.55 |
| CTJ | CHRISTIAN ADDYEL | JUAREZ | DOSAL | HSBC | 4062108964 | 021041040621089644 | christianjuarezdosal@gmail.com | $ | 22,781.32 |
| KLA | CLAUDIA ELENA | ANTILLON | ZAHUITA | SANTANDER | 56629428400 | 014180566294284008 | elena.antillon.z@gmail.com | $ | 23,823.06 |

**Figure 5** – *A portion of the organization's payroll spreadsheet, which identified "KLA" as CLAUDIA ELENA ANTILLON ZAHUITA, with email address elena.antillon.z@gmail.com*

24.     These payroll spreadsheets, which were shared and updated on multiple occasions, also included each employee's true name, corresponding three letter acronym (clave), and personal email address, which were corroborated by subsequent email search warrants of the personal email accounts tied to each operative. Pertinently, the spreadsheet identified employee "KLA" as

13

CLAUDIA ELENA ANTILLON ZAHUITA, email address elena.antillon.z@gmail.com, as a Level 1 employee, one step below executive management.

**CLAUDIA ELENA ANTILLON ZAHUITA**

25.    In addition to the information presented above, your affiant identified significant further evidence indicating that "JULIE BATISTA," "KLA", and juliebatista6@gmail.com were operational pseudonyms/accounts used by CLAUDIA ELENA ANTILLON ZAHUITA, and that ANTILLON ZAHUITA was not only directly engaged in the commission and facilitation of the fraud scheme described above, but a leading figure in the organization's hierarchy. For instance:

26.    Your    affiant    identified    approximately    13    instances    in    which juliebatista6@gmail.com was addressed as "Clau," or "Claudia," in direct email communication, and numerous additional instances when she was addressed as KLA. Furthermore, IP address analysis of login/logout events from Google Mail accounts showed that juliebatista6@gmail.com and elena.antillon.z@gmail.com both had login events from the same IP address – 69.16.172.23 – which resolved to a Virtual Private Network hosted by blackoakcomputers.com under the Internet Service Provider (ISP) Highwinds Network Group. Further research of the IP address showed that the address was also used by lindaruthgrahamward@gmail.com and workkportal@gmail.com, both of which were accounts tied to the timeshare fraud scheme.

27.    On August 15, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) received an email entitled "Leads" from ACEVES CUSTODIO (birminghamrobin@gmail.com). The email included Excel spreadsheets with a list of individuals that held properties at Diamante, Mayan, and Royal Holiday resorts in Mexico. ANTILLON ZAHUITA frequently received these "Lead" lists from ACEVES CUSTODIO, which often included the names of subsequently identified victims of the timeshare fraud scheme.

14

28.    On September 26, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent an email to birminghamrobin@gmail.com with an attached Word document entitled "Descripcion de Puestos" (Job Descriptions). The Word document included a reference glossary of common terms to be used by the organization, as well as a detailed list of job titles/roles within the organization. The following pertinent information was identified in the document:

- The term "CLAVE" which means "Key" in English, was defined as a three-letter code word to be used to refer to collaborators, accountants, offices, and suppliers.
- The term "OPERACION," which means "Operation" in English, was defined as the set of activities that culminated in capturing financial transactions from customers.
- The term "CLIENTE," which means "Client" in English, was defined as the person to whom their operation is directed.
- The term "NOMINA," which means "Payroll" in English, was defined as the act of paying the salaries and commissions of collaborators working for the company.
- The term "CASH-FLOW' was defined as a weekly, monthly, or annual report which aggregates transfers made to the accounts.
- The terms "INACTIVE FILE" and "DEAD FILE" were defined as clients that they have ceased to contact because they were unable to convince to transfer.
- The term "HIT" was defined as the act of requiring a client to make a transfer.
- The term "PITCH" was defined as the pre-approved script to be used to perform the work of sales.
- 15 job roles were defined in detail. Each job description correlated with a piece of the overall work needed to carry out the organization's operation. ANTILLON ZAHUITA's (aka KLA's) job roles were listed as the following:
    o  Monitor the corporate emails.
    o  Payments for services.
    o  Sending contracts to accountants.
    o  Update the cash flow report with new sales
    o  Record financial inflows and outflows.
    o  Maintain the sales record.
    o  Supplier payments.
    o  Support with payroll.

15

29.     On October 16, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent agaia@gmail.com an email that included a Certificate of Good Standing from the Colorado Secretary of State associated with Newport International Investments, LLC. The attachment also included official business registration information for All American Real Estate, LLC. Both companies were identified as being engaged in the captioned timeshare fraud scheme.

30.     On October 30, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent an email to ACEVES CUSTODIO (birminghamrobin@gmail.com) with an attached Word document entitled "Procedure Guide of the Contracts Department." The document outlined the steps to be taken and the timelines to be followed when working with a customer to sign an initial contract and notify customers of initial fee requirements.

31.     On November 20, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent an email to jennif.johnston@gmail.com with an attached Word document entitled "Monitor Guide." The document explained how specific job responsibilities should be carried out, to include submitting proposals and contracts to customers, adding customers to the internal database, and sending faxes/emails appropriately. The guide specifically mentioned correlating activities to the proper company(ies), including Planet Travel, Newport International, Sandia Title, All-American [Real Estate], Advance Travel, and Champion Properties.

32.     On November 29, 2017, ANTILLON ZAHUITA (juliebatista6@gmail.com) received an email from ACEVES CUSTODIO (birminghamrobin@gmail.com) indicating that a new U.S. bank account was to be used for all new clients out of the "LAP" office. The bank account, CitiBank N.A. account number 36885306, was the beneficiary account associated with numerous wire transactions sent by victims of the timeshare fraud scheme, including Victim 1, at the behest of entities associated with Planet Travel, Newport International, and other companies

16

engaged in the scheme. In total, approximately 276 wire transactions, totaling $2,478,463 USD were sent to the account by identified victims.

33.     On January 11, 2018, 88josearturo77@gmail.com, and individual that frequently assisted the criminal organization with office technical support, emailed ANTILLON ZAHUITA (juliebatista6@gmail.com) a spreadsheet of phone lines and related extensions. The phone numbers provided by ARTURO matched the phone numbers tied to Planet Travel, Newport International, and multiple additional companies tied to the timeshare fraud scheme.

34.     On January 19, 2018, ANTILLON ZAHUITA (juliebatista6@gmail.com) received an email from ACEVES CUSTODIO (birminghamrobin@gmail.com) alerting her to the fact that newportinternationalinc.com, the website domain for Newport International Investments, was about to expire, and that she needed to pay the domain host to prevent that from happening. Three days later, ANTILLON ZAHUITA forwarded the email to masteroffice@runbox.com and told him to pay for the domain.

35.     On March 23, 2018, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent ACEVES CUSTODIO (birminghamrobin@gmail.com) an email entitled "Cashflow al 23 de Marzo," with an attached spreadsheet. The spreadsheet showed financial transactions that the organization had received from customers between January 2017 and March 2018. Each row in the spreadsheet included the name of the customer (most of which were ultimately identified as victims of the timeshare fraud scheme), the name of the companies through which the contract was brokered (which corresponded with previously identified companies engaged in the fraud scheme), the three letter coded acronym ("clave") of the sales agent/supervisor associated with the sale, the financial amount received, and the type of fee that had been applied. In total, the spreadsheet showed approximately $5,000,000 in wire transfers received during the captioned timeframe.

17

36.     On hundreds of occasions ANTILLON ZAHUITA (juliebatista6@gmail.com) received emails from organizational employees notifying her that a wire transfer from a "customer" (i.e. a victim) was received. The emails would typically include a copy of the wire receipt and a copy of the signed contract between the customer and the subject organization (Planet Travel, Newport International, etc.). On some occasions, the notification emails would also include a copy of the customer's driver's license or passport. In most instances, ANTILLON ZAHUITA would then forward the notification emails to ACEVES CUSTODIO. For instance, on April 17, 2018, ANTILLON ZAHHUITA (juliebatista6@gmail.com) emailed multiple individuals, including birminghamrobin@gmail.com, to notify them that a wire transfer of $100,000 from Victim 1 had been received. The email included a photocopied receipt of the wire transaction and a copy of the original contract agreement between Planet Travel and Victim 1.



**Figure 7** – *Email from ANTILLON ZAHUITA notifying ACEVES CUSTODIO (and others) about the receipt of a $100,000 wire transaction from Victim 1.*



**Figure 8** – *Copy of wire transaction receipt from Victim 1 attached to email from
ANTILLON ZAHUITA to ACEVES CUSTODIO.*

38.    On April 25, 2018, ANTILLON ZAHUITA (juliebatista6@gmail.com) received an
email from reginacox@newport-intl.com, an organizational operative tied to Newport
International who communicated directly with multiple identified victims throughout the
fraudulent timeshare purchase process. The email listed the names of individuals associated with
The Closing Source and Newport International. Those individuals were all identified as victims of
the timeshare fraud scheme.

39.    From June 1-5, 2018, ANTILLON ZAHUITA (juliebatista6@gmail.com) sent
ACEVES CUSTODIO (birminghamrobin@gmail.com) a series of emails, which included
templates for the tax/fee explanations that they provided to customers. These templates were pre-
written emails that were subsequently provided to customers to justify the need for payments such
as the "immovable property tax," "Capital Gains tax," "Lawyers fee," etc.

19

40.     On June 28, 2018, eddiehdzcruz@gmail.com sent an email to ACEVES CUSTODIO (aloace89@gmail.com), LIZA FLANERY (lizaflanery@hotmail.com), and ANTILLON ZAHUITA (elena.antillon.z@gmail.com), which stated that something needed to be done to reduce the company's gas consumption. In response, ACEVES CUSTODIO stated that any solutions would need to be approved by "CLAU," because she was "the one that has all control of payments and purchases."

41.     On August 20, 2018, BATISTA (juliebatista6@gmail.com) sent BIRMINGHAM (birminghamrobin@gmail.com) copies of various receipts for office-related purchases. One receipt from Office Max listed elena.antillon.z@gmail.com (ANTILLON ZAHUITA's personal email address) as the email address of the purchaser, and also listed "C Elena/Antillon Zahuita" as the name on the credit card used for the purchase.

42.     On October 17, 2018, ANTILLON ZAHUITA (juliebatista6@gmail.com) received an email from masteroffice@runbox.com, which included an Excel spreadsheet attachment entitled "Company_Expirations." The spreadsheet included a list of companies, along with each company's website, hosting service, expiration date, and the email address used to register the company. The list of company names included multiple companies that have been identified as engaging in timeshare fraud activity, to include Planet Travel, Newport International Investments, American International Investment Group, Travel Plus Acquisitions, Closing Source LLC, Advance Travel INC, Sandia Title, and Bear Claw Travel.

43.     On October 22, 2018, ANTILLON ZAHUITA and ACEVES CUSTODIO received an email from gacontabilidadfiscal@gmail.com, an entity that often handled the payroll finances for ACEVES CUSTODIO and the organization's employees. The email included corporate charter information for three Mexican companies that were subsequently used to disburse salaries to

20

employees of the organization – UMR Enterprise SA DE CV, Ocrante Mexico SA DE CV, and Tamsir SC. On the same day, ANTILLON ZAHUITA received a large deposit to her personal bank account from Ocrante Mexico SA DE CV. This deposit occurred subsequently on no less than 14 occasions.



*Figure 9 – Deposit receipt from Ocrante Mexico received by ANTILLON ZAHUITA at email address elena.antillon.z@gmail.com on multiple occasions.*

44.     On October 26, 2018, ANTILLON ZAHUITA sent an email entitled "Payroll Receipt" to 21 individuals identified as employees of the fraud organization. Attached to the emails were transaction receipts which showed money transferred from TAMSIR SC to personal bank accounts owned by each of the 21 individuals.

45.     On December 18, 2018, ANTILLON ZAHUITA (elena.antillon.z@gmail.com) emailed herself a copy of a rental application she had filled out. In the application, she stated that her employer was Ocrante Mexico, SA DE CV., a primary account through which employees supporting the timeshare fraud scheme were paid. ANTILLON ZAHUITA also provided the names of multiple references – Sergio Leon Kuri, Mariana Hernandez Guevera, and Francisco Javier Garcia Magana – each of whom were identified as employees of the timeshare fraud organization through the organization's payroll spreadsheets. Finally, ANTILLON ZAHUITA listed Consultora de Destinos en Mexico y el Mundo (Destinations Mexico) as her guarantor.

21

46.     **CBP Search and Interview of MARTIN ALONSO ACEVES CUSTODIO
AND LIZA FLANERY FIERRO** – On December 29, 2018, ACEVES CUSTODIO and
FLANERY FIERRO flew from Mexico to Chicago Midway Airport, at which time they were
interviewed and searched by Customs and Border Patrol (CBP). During their search, CBP
identified a notebook belonging to ACEVES CUSTODIO. A review of ACEVES CUSTODIO's
notes revealed names, acronyms, and other information directly tied to the fraud scheme, including
multiple references to "KLA" or "Claudia." For instance:

-   Page 5 (PDF2) contained a list that stated "6…Only Manager to KLA – Managers Sales,
    IT, Operation with KLA. 7. Cloud – Accesses and Supports GLL."
-   Pages 13-17 (PDF3) contained prepared remarks for an event titled "2nd Anniversary." The
    remarks, written below, included the names and acronyms of people and offices identified
    by your affiant throughout the investigation, including Claudia:
    -   *"…those people that have [done] an outstanding job this year: "We have in the
        admin area Claudia, let's give her a hand. In operations we have Guille, In I.T.
        Management Arturo…In the coordination of projects consiglieri Cesar Vazquez.
        And in sales for CAS Christian, Paco, Silem…LTN Maybelline, Mauricio, and
        Kevin…And LAP Samer and Emiliano. I also want to recognize the effort of
        the…Monitors: Isabel, Sigrid, and Fabiola…Officials: Mariana, Ana and
        Linda…And to all the salespeople that make this family a dignified and enjoyable
        place of work…To our accountants Edy and Ramon, and also the floor
        auxiliaries: Caro, Mayra, Sandy, Wendy, Yadira, Jaime…and to the person
        responsible for all of us being together my associate and wife….But above all to
        the salespeople that have made these 9.5 M in sales in the year seem like
        something simple with outstanding performance…The goal for next year is 12m."*

47.     **CBP Interview of ANTILLON ZAHUITA and SERGIO LEON KURI** – On
February 9, 2019, CLAUDIA ELENA ANTILLON ZAHUITA (DOB: 04/07/1983, COB: Mexico,
MX, COC: Mexico) arrived at the Dallas/Fort Worth International Airport on American Airlines
flight 1066 from Mexico City, Mexico. ANTILLON ZAHUITA was traveling with boyfriend
SERGIO LEON KURI (DOB: 07/09/1981, COB: Irapuato, Mexico) (telephone number

22

4621892945). ANTILLON ZAHUITA presented her Mexican passport (G18657936) and valid

B1/B2 visa BCC for inspection. The Primary CBP Officer referred the subject to Passenger Control

Secondary for further processing. During the interview ANTILLON ZAHUITA stated that she

currently worked in Administration in Mexico, with home address Bosque Versalles 71 int. 35,

Coregldara, Queretaro. ANTILLON stated she could be reached by mobile number (477) 393-

1288 and email address elena.antillon.z@gmail.com. CBP retained the following photos on file

for ANTILLON ZAHUITA, matching other identified photographs from ANTILLON

ZAHUITA's email accounts:





*Figure 10 – CBP-retained photographs of ANTILLON ZAHUITA, which matched photographs from email account elena.antillon.z@gmail.com*

23

## CONCLUSION

48.     Based on the forgoing, I request that the Court issue the proposed arrest warrant for

Claudia Elena Antillon Zahuita.

Respectfully submitted,

_Brett Heil_

Brett Heil
Special Agent
Federal Bureau of Investigation


Subscribed to and sworn before me,
this **24** day of June, 2019.

HONORABLE JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24

DUPLICATE ORIGINAL

SEALED

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Louisiana

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  19-74 MAG |
| CLAUDIA ELENA ANTILLON ZAHUITA | ) | |
| a/k/a Julie Batista | ) | |
| a/k/a KLA | ) | |
| | ) | |

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    CLAUDIA ELENA ANTILLON ZAHUITA a/k/a Julie Batista a/k/a KLA                    ,
who is accused of an offense or violation based on the following document filed with the court:

❒ Indictment     ❒ Superseding Indictment     ❒ Information     ❒ Superseding Information     ☑ Complaint
❒ Probation Violation Petition     ❒ Supervised Release Violation Petition     ❒ Violation Notice     ❒ Order of the Court

This offense is briefly described as follows:

   See attached Affidavit.

Date:  ___06/24/2019___                          _____
                                                   *Issuing officer's signature*

City and state:   ___New Orleans, Louisiana___      ___Hon. Joseph C. Wilkinson, Jr., U.S. Magistrate Judge___
                                                   *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____               _____ *Arresting officer's signature* |
|               _____ *Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____   Weight: _____

Sex: _____   Race: _____

Hair: _____   Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____